IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02938-KLM

ANTHONY R. STRONG,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

_____

## ORDER

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record**
**[#11]**,[2] filed December 22, 2014, in support of Plaintiff's Complaint [#1] seeking review of
the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security
Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for disability
insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401
et seq. On March 25, 2015, Plaintiff filed an Opening Brief [#16] (the "Brief"). Defendant
filed a Response [#17] in opposition, and Plaintiff filed a Reply [#18]. The Court has
jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and
1383(c). The Court has reviewed the entire case file and the applicable law and is
sufficiently advised in the premises. For the reasons set forth below, the decision of the

_____

[1] The parties consented to proceed before the undersigned for all proceedings pursuant
to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Order of Reference* [#28].

[2] "[#11]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF). This convention is used throughout this Order.

Commissioner is **AFFIRMED**.

## I. Factual and Procedural Background

Plaintiff alleges that he became disabled at the age of forty-seven on January 2, 2012, due to a variety of impairments.  Tr. 125.[3]  On January 27, 2012, Plaintiff filed an application for disability insurance benefits under Title II.  Tr.  125.  On April 30, 2013, an Administrative Law Judge (the "ALJ") held a hearing on Plaintiff's application.  Tr. 37.  Plaintiff, his wife Kelly Strong ("Ms. Strong"), and an impartial vocational expert ("VE") testified at the hearing.  Tr. 38.  On June 18, 2013, the ALJ issued an unfavorable decision.  Tr. 18-36.

The ALJ determined that Plaintiff met the insured status requirements of the Act through June 30, 2013, and that Plaintiff had not engaged in substantial gainful activity ("SGA") since January 2, 2012 (the alleged onset date of his disability).  Tr. 20.  The ALJ found that Plaintiff suffers from three severe impairments: (1) migraines, (2) chronic pain syndrome, and (3) "organic mental disorder, status post history of multiple concussions."  Tr. 20.  However, the ALJ also found that these impairments, individually or in combination, do not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526)."  Tr. 23.  The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform "light work," with the following limitations:

> The claimant can lift and carry 10 pounds frequently and 20 pounds occasionally.  He can stand and/or walk, with normal breaks, for a total of 6 hours in an 8-hour workday, and can sit, with normal breaks, for a total of 6

---

[3]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 11, 11-1, 11-2, 11-3, 11-4, 11-5, 11-6, 11-7, and 11-8, by the sequential transcript numbers instead of the separate docket numbers.

> hours in an 8-hour workday.  He can perform pushing and pulling motions with his upper and lower extremities within the aforementioned weight restrictions.  He should avoid unprotected heights and moving machinery. The claimant occasionally can balance, stoop, crouch, kneel, crawl, and climb ramps and stairs, but can never climb ladders, ropes, and scaffolds.

Tr. 26.  Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff was unable to perform any past relevant work but that "there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . ." Tr. 34-35.  Specifically, based on the testimony of the VE, the ALJ concluded that Plaintiff could perform the representative occupations of small products assembler, electronics worker, and drive-in order clerk.  Tr. 36.  She therefore found Plaintiff not disabled at step five of the sequential evaluation.  Tr. 36.  The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review.  20 C.F.R. §§ 404.981.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also*

*Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.   42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).  In other words, the Court does not reexamine the issues de novo.  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*"  *Oldham v. Astrue*,

509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.   Legal Standard

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient [RFC] to perform

other work in the national economy." *Id.*

## B. Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. Analysis

Plaintiff requests judicial review of the ALJ's decision denying his disability insurance benefits. *Brief* [#16] at 7. Specifically, Plaintiff argues that: (1) the ALJ erred in her determinations regarding Plaintiff's credibility, (2) the ALJ erred in determining that Plaintiff retained the ability to perform the RFC of "light work" or to perform any kind of work, (3) the ALJ improperly rejected the opinions of the treating physician, Patrick Miller, M.D. ("Dr.

Miller"), (4) the Appeals Council erred in failing to review Plaintiff's appeal when new and material evidence was submitted for consideration, and (5) the ALJ made other errors prejudicial to Plaintiff.  The Court begins with Plaintiff's argument regarding ALJ prejudice.

## A.    The Alleged Prejudice of the ALJ

Plaintiff asserts that the ALJ demonstrated prejudice against him.  *Brief* [#16] at 55-56.  However, the entirety of Plaintiff's brief argument here appears to be that the ALJ was prejudiced against Plaintiff because the ALJ found certain claimed medical issues to be unsupported, incredible, or non-severe.  *See id.*  The Court has found no legal support for the assertion that statements by the ALJ such as "the record is not supportive of his remaining claims" exhibit prejudice.  *See id.* at 56 (stating this type of comment is "snarky" and "reflect[s] a demonstrable prejudice against Plaintiff"); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) (stating that "[j]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge").  Further, even if Plaintiff disagrees with the ALJ's evaluation of certain of his impairments, this alone is an insufficient basis on which to find that the ALJ was prejudiced.  *See Brief* [#16] at 55-56 (discussing the ALJ's allegedly prejudicial evaluation of Plaintiff's asserted medical conditions, including hepatitis C, degenerative disc disease, and fibromyalgia); *see Liteky*, 510 U.S. at 555 (stating that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion").  In short, Plaintiff's argument does not overcome the "presumption of honesty and integrity in those serving as adjudicators" in administrative proceedings.  *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  Accordingly, the Court finds no reversible error based on alleged prejudice by the ALJ.

**B.     The ALJ's Evaluation of Plaintiff's Credibility**

Plaintiff argues that the ALJ erred in her adverse credibility determinations with respect to both Plaintiff and his wife.  *Brief* [#16] at 27-41.

An ALJ's credibility findings are entitled to "particular deference." *Wahpekeche v. Colvin*, __ F. App'x __, __, No. 15-6060, 2016 WL 537248, at *1 (10th Cir. Feb. 11, 2016) (citing *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001)).  "Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion." *Wahpekeche*, 2016 WL 537248, at *1 (quoting *White*, 287 F.3d at 910).  However, an ALJ's decision must still "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Wahpekeche*, 2016 WL 537248, at *1 (quoting SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996)).

In addition to the objective medical evidence, the factors which should be considered when assessing a claimant's credibility include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors which precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medications, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20

C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 347186, at *3.  The ALJ must link these factors to evidence but is *not* required to perform "a formalistic factor-by-factor recitation of the evidence."  *Wahpekeche*, 2016 WL 537248, at *2 (citing *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004); quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).  "In evaluating the ALJ's analysis, we do not require technical perfection, but are guided by common sense."  *Wahpekeche*, 2016 WL 537248, at *2 (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012)).

The ALJ spent significant time discussing Plaintiff's credibility, the primary portion of which the Court here recites:

> The undersigned also notes that, the claimant has described daily activities and social interactions that are not limited to the extent one would expect if his physical and mental impairments were as severe as alleged.  Of note, at the hearing the claimant testified that that [sic] he recently married, but has been with his spouse for 6 years.  His wife has one adult child, and he has three.  He sees his children all the time, and has regular contact with his two grandchildren.  He lives with his wife in a mobile home.  She works, so he is home alone during the day.  He spends the day watching television.  He maintains a driver's license, although he limits his driving.  He plays guitar.  He walks his three, small dogs in the evenings.  He tries to do as much as he can when he feels good.  He and his wife go out to eat 1-2 times weekly, and they go to church once weekly.  He does the laundry.  He will make grocery lists, and once in a while he will "tag along" to the grocery store, but his wife usually goes.  He does the household chores.  He prepares TV dinners for himself.  He will cook spaghetti and chili.  He washes the dishes or loads and unloads the dishwasher.  The fact that the claimant is able to engage in such a wide variety of activities, to interact appropriately with friends and family, and to go so often out of his home, indiciates that he has been capable of sustaining some level of work-related activities since his alleged onset date.  At his young age, the regulations do not support a finding of total disability as defined by social security regulations.

> The undersigned also considered other factors when assessing the claimant's credibility.  For instance, as previously noted, the claimant's conditions all are longstanding in nature, stemming from several motorcycle accidents.  Yet, despite these accidents, which apparently occurred in the distant past, the claimant has been able to work.  In fact, he reported at an emergency room visit in April 2011 that his medical problems did not interfere

with his work as a car dealer.  There is no evidence of any worsening of any of his conditions since that time.  Additionally, although he has reported in conjunction with this application that he lost this job due to his conditions, there is nothing in the record substantiating this.  In fact, treatment records reflect that he only reported to his primary care provider that he had been laid off.  He made no mention that it was due to his physical problems.  Moreover, since the time of the layoff the claimant has applied for and received unemployment benefits.  The Colorado unemployment insurance program is based on the principles that only those persons who are mentally and physically able to work, are available for work, and are actively seeking work are entitled to unemployment benefits.   The claimant's collection of unemployment benefits undercuts his credibility.  In fact, the claimant testified that he is actively seeking work, albeit on a part-time basis, in the motorcycle parts sales field.  The fact that he has expressed a willingness to work since his alleged onset of disability is inconsistent with his claim of disability.

The claimant also has provided inconsistent information on several issues that affects his credibility.  As previously noted, he repeatedly has reported that he was a professional motorcycle racer, when earnings records do not support his statements.  Additionally, he testified that this activity was more of a hobby.  He also reported sustaining multiple concussions and broken bones due to this activity, yet there are no medical records to corroborate his statements.   In fact, emergency room records reflect that the claimant repeatedly has declined imaging, which could corroborate his allegations of broken bones, with available imaging not supportive of his statements.  He reported to Dr. Valette at a May 2012 psychological evaluation that he had not ridden a motorcycle in over a year, when treatment records document as late as July 2011 that he continued to "ride" a motorcycle.  He denied using any drugs or alcohol at the May 2012 psychological evaluation, and also in his testimony, yet treatment records document not only his narcotic pain medication abuse, but also use of both alcohol and marijuana.  He told Dr. Valette that he had been hospitalized psychiatrically in Pennsylvania in 2006 for depression.  Yet, a March 2007 emergency room treatment note for drug abuse while living in Pennsylvania reflects that the claimant then denied having any psychiatric hospitalizations.  He affirmatively denied any such hospitalizations at an April 2011 emergency room visit for suicidal ideation.  All of this suggests that his statements are not entirely credible.

Tr. 30-31 (internal citations omitted).

In addition, Plaintiff also contests the ALJ's assessment of Plaintiff's wife's credibility.

*Brief* [#16] at 37-40.  In the Decision, the ALJ stated:

In accordance with Social Security Ruling 06-03p, the undersigned also considered the testimony of the claimant's wife, Kelli Strong.  Her testimony

does not establish that the claimant is disabled.  Since Ms. Strong is not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, the accuracy of her testimony is questionable.  Moreover, by virtue of her relationship to the claimant as his wife, she cannot be considered to be a disinterested third party witness whose statement would not tend to be colored by the affection for the claimant and natural tendency to agree with the symptoms and limitations the claimant alleges.  Most important, significant weight cannot be given to her testimony, because it, like the claimant's, is simply not consistent with the preponderance of the evidence.  Of note, Ms. Strong stated that when the claimant takes Demerol injections for his headaches, he is incoherent, at moments is lethargic, wanders, and then falls asleep for the evening.  The period of incoherency and lethargy lasts 4-6 hours, before he passes out.  He is drained and worn out the entire next day, and is more normal the following day.  If he is incapacitated, she has to stay home and rearrange her work schedule.  Treatment records do not support her statements.  The claimant has not reported such effects to his primary care provider.  Emergency room records reflect that the claimant responded quickly to treatment for such headaches in the emergency room, and was cogent and able to ambulate away on his own accord.  As such, no weight is accorded it.

Tr. 34.

In part, Plaintiff asserts that the ALJ erred by finding that Plaintiff's "collection of unemployment benefits undercuts his credibility." *Brief* [#16] at 31 (citing Tr. 31).  However, the Tenth Circuit Court of Appeals has explicitly stated that such considerations are "entirely proper." *Pickup v. Colvin*, 606 F. App'x 430, 433 (10th Cir. 2015).  "There is an obvious inconsistency between claiming an *ability* to work for purposes of obtaining unemployment compensation and claiming an *inability* to work for purposes of obtaining social security benefits." *Id.* (emphasis in original).  "The ALJ was thus entitled to rely on [the claimant's] receipt of unemployment benefits as a reason weighing against the credibility of [his] claim of a completely disabling impairment." *Id.*  Plaintiff's citation to a 2010 memorandum issued by the Chief ALJ regarding the Social Security Administration's policy with respect to unemployment benefits does not contradict Tenth Circuit precedent.

*See Brief* [#16] at 32-33 (citing *Ex. 1, Memo* [#16-1]).  The memorandum simply states that receipt of unemployment benefits does not automatically preclude the receipt of disability benefits.  *Ex. 1, Memo* [#16-1].  The Chief ALJ explicitly states that the receipt of unemployment benefits is one of many factors which "must" be considered.  *Id.*

Plaintiff also asserts that the ALJ erred by considering Plaintiff's expressed willingness to work as impacting Plaintiff's credibility.  *See Brief* [#16] at 33-34.  However, the Tenth Circuit has stated that "a claimant's willingness to work [is] a relevant factor in assessing a claimant's credibility." *Bennett v. Colvin*, No. 2:13-DV-348-DN-PMW, 2015 WL 348561, at *8 (D. Utah Jan. 23, 2015) (citing *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013); *Decker v. Chater*, 36 F.3d 953, 955 (10th Cir. 1996)).  Thus, the ALJ did not err by considering this factor when evaluating Plaintiff's credibility.

To the extent Plaintiff argues that the ALJ erred by considering Ms. Strong's testimony in accordance with SSR 06-03p, this argument is rejected.  *See Brief* [#16] at 39.  This Social Security Ruling applies to all sources who are not "acceptable medical sources," including lay witnesses, despite Plaintiff's argument to the contrary.  *See, e.g.*, SSR 06-03p 2006 WL 2329939, at *4 (Aug. 9, 2006) ("Accordingly, this ruling clarifies how we consider opinions and other evidence from medical sources who are not 'acceptable medical sources' and from 'non-medical sources,' such as teachers, school counselors, social workers, and others who have seen the individual in their professional capacity, as well as evidence from employers, spouses, relatives, and friends."); *see also id.* at *6 ("In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and

extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."). Accordingly, the ALJ did not err by considering Ms. Strong's testimony in accordance with SSR 06-03p.

Plaintiff's remaining arguments concern whether substantial evidence supports the ALJ's credibility determination. In short, Plaintiff appears to argue that the ALJ erred by mischaracterizing and/or ignoring evidence favoring Plaintiff's and Ms. Strong's credibility. However, the Court must "decline [Plaintiff's] invitation to reweigh the evidence to substitute our judgment for that of the Commissioner" when the ALJ utilized the correct legal standards in her credibility finding. *Harper v. Colvin*, 528 F. App'x 887, 892 (10th Cir. 2013) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). "[W]e will not upset an ALJ's credibility determination that is closely and affirmatively linked to substantial evidence . . . ." *Sitsler v. Astrue*, 410 F. App'x 112, 118 (10th Cir. 2011). Further, the ALJ is not required to discuss every piece of evidence she considers. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ is only required to explain and support with substantial evidence which of a claimant's testimony she did *not* believe and why, *see McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). Here, based on the Court's review of the ALJ's credibility determinations, the Court finds that the ALJ did precisely what was required by identifying a number of inconsistencies in the record in connection with Plaintiff's and his wife's statements. *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (stating that "[i]nconsistencies are a reasonable basis upon which to find a claimant not credible").

Accordingly, the Court finds that the ALJ did not commit reversible error on this issue.

C.      The Opinion of Dr. Miller

Plaintiff argues that the ALJ improperly assigned "no weight" to the opinion of Dr. Miller, Plaintiff's treating physician.  *Brief* [#16] at 46-54.

An ALJ must give the opinion of a treating physician controlling weight only when it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).   "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."   *Id.*   Even if a treating physician's medical opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989).   Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2)the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c). Although the six factors listed above are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Oldham*, 509 F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300).   To the extent Plaintiff argues that a treating physician's opinion must be given some level of weight, this argument is rejected.

*See, e.g.*, *Payton v. Astrue*, 480 F. App'x 465, 467-70 (10th Cir. 2012) (holding that the ALJ

appropriately gave no weight to the opinion of the claimant's treating physician).

In her assessment of Dr. Miller's medical opinions, the ALJ stated:

> In reaching these conclusions [regarding Plaintiff's RFC], the undersigned considered the findings from the claimant's primary care provider, Dr. Miller. Dr. Miller completed an assessment on May 2, 2013. In it, he assessed the claimant, in relevant part, as able to occasionally lift and carry less than 10 pounds, and rarely up to 20 pounds. The claimant can sit and stand/walk for less than 2 hours total each in an 8-hour workday. Dr. Miller noted that these limitations had been in effect since November 2010. The undersigned notes that, the claimant was working at substantial gainful activity levels in November 2010, and continued to work at such levels until being laid off in January 2012. Treatment records do not show any worsening of his condition during the intervening period, and in fact reflect that his conditions are longstanding and stable in nature, and did not prevent work. The undersigned also notes that Dr. Miller only provided conservative treatment to the claimant, principally with medication refills. His notes do not show that any physical exams were ever completed on the claimant, so it is unclear on what bases he reached his conclusions. In fact, although Dr. Miller's 2013 assessment noted that while the claimant had bilateral shoulder and knee pain, as well as cervical and lumbar pain and daily headaches, his contemporaneous treatment notes do not show any such complaints. Contemporaneous emergency room treatment notes, where physical exams were conducted, do not support such complaints or his conclusions, and repeatedly reflect the claimant had normal physical and/or mental exams. Dr. Miller's report of side effects from medication is also without support in his treatment notes. Given the lack of objective support or clinical findings for Dr. Miller's statements, and in consideration of the aforementioned factors, the undersigned finds that his opinion is not entitled to any weight.

Tr. 32 (internal citations omitted).

The Court finds that the ALJ's analysis is sufficiently specific to make clear the

weight she gave to Dr. Miller's medical opinion and the reasons for that weight. *See*

*Oldham*, 509 F.3d at 1258. Because the ALJ provided specific reasons demonstrating that

Dr. Miller's opinions were not "well-supported by medically acceptable clinical and

laboratory diagnostic techniques" and were not "consistent with other substantial evidence

in the record," Dr. Miller's opinion was not entitled to controlling weight. *See Watkins*, 350

F.3d at 1300.  In further evaluating the opinion, the ALJ clearly weighed factors described in *Drapeau*, 255 F.3d at 1213, including the length of the treatment relationship, the nature and extent of the treatment relationship, the degree to which Dr. Miller's opinion is supported by relevant evidence, consistency between the opinion and the record as a whole, and other factors which tend to support or contradict the opinion.   Because substantial evidence supports the ALJ's decision regarding Dr. Miller's opinion, the Court rejects Plaintiff's suggestion that the Court reweigh the medical evidence and substitute its judgment for that of the Commissioner's.  *See Thompson v. Colvin*, 551 F. App'x 944, 948 (10th Cir. 2014) (citing *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008)). Accordingly, the Court finds that the ALJ did not commit reversible error with respect to her assessment of Dr. Miller's opinion.

As part of his argument regarding the weight accorded to Dr. Miller's opinion, Plaintiff also briefly argues that the ALJ erred by according "great weight" to the opinion of Craig Billinghurst, M.D. ("Dr. Billinghurst"), who is a State agency medical consultant.  *Brief* [#16] at 51-52.  Plaintiff does not contest that the ALJ was entitled to rely on Dr. Billinghurst's opinion to some extent.  *Id.* at 51.  However, Plaintiff asserts that Dr. Billinghurst's opinion was rendered in the absence of a review of Dr. Miller's office notes, Dr. Miller's Medical Source Statement, the medical records from Memorial Hospital, and Plaintiff's testimony. *Id.*  However, Plaintiff fails to argue how a review of any of these materials could result in altering Dr. Billinghurst's opinion.  In other words, even assuming that it was error for the ALJ to rely on Dr. Billinghurst's opinion in the absence of Dr. Billinghurst first reviewing this evidence, Plaintiff does not direct the Court's attention to any specific portion of these additional materials which could potentially result in the alteration of any specific portion of

Dr. Billinghurst's opinion.  In the absence of a more specific argument, the Court finds that, even if the ALJ erred, such error was harmless.  Accordingly, the Court finds that the ALJ did not commit reversible error on this issue.

Finally, the Court notes that Plaintiff also conclusorily argues that "[t]he ALJ improperly relied on the opinion of the State agency psychological consultant, Mark Suyeishi to determine that [Plaintiff] had no limitations in social interaction and only mild limitation in the area of social functioning . . . ."  *Brief* [#16] at 51.  The ALJ did give "some weight" to Dr. Suyeishi's opinion, to the extent it was supported by the medical record, as the ALJ fully explained.  Tr. 24.  However, Plaintiff does not provide further argument or direct the Court's attention to specific evidence which contradicts Dr. Suyeishi's opinion. It is not automatically error to rely on the opinion of a State agency psychological consultant.  *See, e.g.*, SSR 96–6p, 1996 WL 374180, at *3.  Thus, in the absence of a more focused argument regarding Dr. Suyeishi, the Court finds that the ALJ did not commit reversible error on this issue.

## D.    The ALJ's RFC Holding

Plaintiff argues that the ALJ erred by determining that Plaintiff retained the ability to perform "light work."  *Brief* [#16] at 41-46.  After a lengthy, detailed discussion, the ALJ concluded by summarizing her RFC finding as follows:

> After considering the evidence in its entirety, including the testimony, the undersigned concludes that the evidence of the claimant's migraines and chronic pain would reasonably restrict the claimant from performing heavy lifting, and thus limit the claimant to work at the light level of exertion, with only occasional postural activities.  His mental condition reasonably would restrict the claimant to unskilled work involving a SVP level of 1 or 2.  In reaching these conclusions, the undersigned has considered all of the claimant's statements concerning his limitations, but cannot find his complaints are entirely credible in light of the evidence of record.  The claimant has reported that, he is unable to work at any level, yet the objective

evidence, clinical findings, conservative treatment showing his conditions all have been stable with [a] change in medication, as well as fairly active lifestyle, work history, and inconsistent statements prevent the imposition of more rigorous restrictions.

Tr. 34.[4]

In part, Plaintiff argues that the ALJ erred by failing to include any non-exertional limitations in the RFC, despite determining that Plaintiff's severe impairments included "organic mental disorder and status post history of multiple concussions," and despite evidence of an alteration in mental state in connection with migraine headaches, anxiety, and depression.  *Brief* [#16] at 42.   However, the ALJ accounted for these mental impairments by limiting Plaintiff to unskilled work.  *See* Tr. 34.  The ALJ discussed in detail her reasons for not imposing any greater restrictions in connection with Plaintiff's mental impairments.  *See, e.g.*, Tr. 30 (discussing the psychological evaluation of Brett Valette, Ph.D.), 33 (discussing the assessments provided by two State agency psychological consultants, Dr. Suyeishi and Paul Cherry, Ph.D.).   Given that substantial evidence underlies this portion of the ALJ's assessment, the Court declines Plaintiff's invitation to reweigh the evidence in this case.  *See Thompson*, 551 F. App'x at 948.  Accordingly, the Court finds that the ALJ did not commit reversible error with respect to this issue.

Plaintiff also argues that the ALJ erred by failing to find that Plaintiff's pain kept him from working on a regular and continuing basis, i.e., a basis equivalent to eight hours per day and five days per week.  *Brief* [#16] at 43-46.  However, this is once again an invitation to reweigh the evidence, which the Court must not do.  *See Thompson*, 551 F. App'x at

---

[4] An SVP level of 2 refers to a "specific vocational preparation" of up to 30 days, while an SVP of 1 refers to a short demonstration.  This is the amount of lapsed time required by a typical worker to learn techniques, acquire the information, and develop the facility needed for average performance in a specific job.  *Dictionary of Occupational Titles*, U.S. Dep't of Labor, 4th Ed., Revised 1991.

948.  The ALJ thoroughly examined the evidence and cited substantial evidence to support

her conclusion that the frequency and severity of Plaintiff's migraines and other chronic

pain were not so great as to preclude Plaintiff's regular employment when Plaintiff takes

his medication, despite the presence of some side effects.  *See, e.g.*, Tr. 28.

Finally, Plaintiff argues that no medical evidence supports the ALJ's assessment of

Plaintiff's RFC.  *Brief* [#16] at 46.  Plaintiff states that the "only consultative examination

was performed by Brett Valette, Ph.D."  *Id.*  The ALJ thoroughly examined Dr. Valette's

opinion and, despite Plaintiff's claim to the contrary, the RFC reflects Dr. Valette's opinion

to the extent the ALJ agreed that Plaintiff retains the ability to perform unskilled tasks,

"despite a rule out diagnosis of a cognitive disorder."  Tr. 30.  To the extent Plaintiff may

be asserting that no medical evidence supports the physical RFC, the Court has already

noted that the ALJ did not err in relying on the opinion of Dr. Billinghurst.  *See* Tr. 32.

Because the ALJ's RFC assessment is supported by substantial evidence, and

because the Court must not reweigh the evidence of record, the Court finds that the ALJ

did not commit reversible error with respect to the her assessment of Plaintiff's RFC.

## E.     The Appeals Council's Review of the ALJ's Decision

Plaintiff argues that the Appeals Council erred in failing to review Plaintiff's appeal

when new and allegedly material evidence was submitted for its consideration.  *Brief* [#16]

at 54-55.  The Notice of Appeals Counsel Action states in relevant part:

> In looking at your case, we considered the reasons you disagree with the
> decision and the additional evidence listed on the enclosed Order of Appeals
> Council.  We considered whether the Administrative Law Judge's action,
> findings or conclusion is contrary to the weight of evidence of record.  We
> found that this information does not provide a basis for changing the
> Administrative Law Judge's decision.

Tr. 1-2.

First, the Court notes that the Appeals Council was not required to provide further explanation of its decision beyond stating that the new evidence provided no basis for a change in the ALJ's decision. In *Lynn v. Colvin*, __ F. App'x __, __, No. 15-5031, 2016 WL 26510, at *1 (10th Cir. Jan. 4, 2016), the claimant argued that the Appeals Council failed to properly consider newly-submitted evidence. The Tenth Circuit Court of Appeals rejected this argument:

> The Appeals Council said that it had considered the new evidence and determined that it did not provide a basis for changing the administrative law judge's decision. This statement sufficiently addressed the new evidence, for we held in *Martinez v. Barnhart*, 444 F.3d 1201 (10th Cir. 2006), that the Appeals Council had no obligation to explain how it analyzed new evidence. There we held that the Appeals Council satisfied its obligation by stating that it had considered the additional evidence and that it did not provide a basis for changing the administrative law judge's decision. . . . [T]he [*Martinez*] opinion turns on the absence of any legal requirement for the Appeals Council to discuss the effect of the newly submitted evidence: "While an express analysis of the Appeals Council's determination would have been helpful for purposes of judicial review, [the plaintiff] points to nothing in the statutes or regulations that would require such an analysis where new evidence is submitted and the Appeals Council denies review."

*Lynn*, 2016 WL 26510, at *1 (internal citations omitted).

The Appeals Council may err in denying review based on new evidence "only if the new evidence provides a basis for changing the ALJ's decision." *Welch v. Colvin*, 566 F. App'x 691, 696 (10th Cir. 2014) (citing *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)). "[A]ny new evidence submitted to the Appeals Council on review becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 n.4 (10th Cir. 2014) (quoting *Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006)).

The Court has examined the allegedly "new and material" evidence submitted by Plaintiff to the Appeals Council. *See* Tr. 381-98. The Court first notes that Plaintiff did not

link this evidence to the ALJ's Decision in more than a conclusory fashion and, even where the Court can discern an attempt to do so, the Court does not see how this evidence might materially alter the ALJ's Decision. Plaintiff does not once cite to a specific page of the ALJ's Decision which contains findings which could be altered based on a review of the "new and material" evidence. For example, Plaintiff states "[b]ecause the [newly-submitted] prescription printout covers one year before the alleged onset date through one year after the hearing and because it totally refutes a significant number [of] findings made by the ALJ, the prescription printout is very definitely a 'new and material' piece of evidence supporting the appeal." *Brief* [#16] at 55. Plaintiff does not here specify how the printout is material, although earlier in the Brief he states that the "prescription medication records were submitted to verify the frequency of [Plaintiff's] various medication refills." *Id.* at 25. He also states elsewhere that the "prescription printout provided to the Appeals Council is proof positive that the Plaintiff employs the injections in a regular basis as he testified." *Id.* at 41. However, like the Appeals Council, the Court does not believe that this evidence provides a basis for changing the ALJ's decision. Additional evidence, especially the evidence submitted from Dr. Miller, is generally nothing more than reiteration and restatement of materials previously submitted to and examined by the ALJ.

Accordingly, the Court finds that the Commissioner did not err with respect to this aspect of her decision.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear their own costs and attorney's fees.

Dated:  March 16, 2016

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge